IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-00541-REB-KLM
Alayna Ordonez, Evan Ordonez and Elijah Ordonez
    Plaintiffs,
v.
Marriott International and HIT SWN TRS, LLC
    Defendants.

---

Motion 105 Defendant's Motion for Sanctions for Spoliation of Material Evidence

---

This Motion comes before the Special Master on Defendant's Motion for Sanctions for Spoliation of Material Evidence. (# 105)  The Motion was referred to the special master pursuant to Magistrate Judge Kristen Mix's Order Appointing Master for Discovery. (#110)  The Special Master reviewed the Motion, (# 105), the Response (# 115) and the Reply (# 118). The Motion has been fully briefed and is ripe for resolution.  The parties have indicated that no oral argument is needed.

BACKGROUND

This Motion (#115) concerns the preservation of cell phone data, the inspection of the Decedent's and his wife's cell phone devices, and related information thereto.  Plaintiffs indicated by way of responses to various interrogatories, that the devices in question were returned to AT & T. The Defendants were not given the opportunity to inspect and/or collect data from the devices prior to AT& T receiving them. As a result, Defendants filed this Motion (#115).

The request for cell phone data arises out of the tragic facts shaping this case. Louis Ordonez died on Feb.15, 2018 when he was hit by a car and killed following an evening of celebrating and drinking in Denver. Ordonez and a friend, Baylee Ladner, had a late dinner at a restaurant near their hotels and then returned to Ladner's hotel, the Fairfield Inn and Suite.  As Ordonez was not registered at the Fairfield but rather the nearby Springhill Suite Hotel, Ordonez, while still intoxicated, left the Fairfield early in the morning of Feb. 15, 2018 and attempted to

walk back to the Springhill Suite Hotel. He was struck by a car on Tower Road in Denver shortly thereafter.

Defendants have been persistent in their efforts to obtain the requested cell phone data. A complaint was filed in the case on January 27, 2020. Thereafter, on August 7, 2020, Defendant served formal initial written discovery requests, including interrogatories and requests for production seeking information and the production of the Decedent's calls and text history for Feb. 14 and 15, as well as photos on the cell phones, the physical location of each cell phone in the Decedent's possession, and the identification of ride-share applications installed on the phone. The Defendants also requested the physical production of the phones.

On September 23, 2020, Plaintiffs acknowledged that Plaintiffs possessed the Decedent's mobile phone. However, neither the phones nor the data contained on them was produced. On March 26, 2021, in response to a second request for production of all text messages between Plaintiff Alayna Ordonez and the Decedent, Plaintiffs stated that they "do not have either cellphone, both were turned into A t & T."    Plaintiff did not disclose to Defendants their intent to return the cell phones to A T & T prior to doing so. According to Plaintiffs' brief, the cell was returned to A T & T because Mrs. Ordonez "could not stand to look at it any longer and cannot afford to pay unnecessary bills at this time" (# 115 at page 8)

The Plaintiffs did subpoena A T & T and request information about the cell phone usage, the presence of applications, and photographs from A T & T. The answer from A T & T was disclosed to the Defendants in response to their discovery requests. *However, the subpoena requested information pertaining to July 14 and 15, 2018, instead of the correct dates of the accident, Feb. 14 and 15, 2018.*

ANALYSIS

A.  Duty to Preserve

To obtain a sanction for spoliation of evidence, a party must first show that a party had a duty to preserve evidence because it knew, or should have known, that litigation was imminent and second, that the adverse party was prejudiced by the destruction of the evidence. *Burlington N. and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a

fertile imagination, that access to the lost material would have produced evidence favorable to his cause. *In re Krause, 367 B.R. 740, 764 (D. Kan 2007).*

There is a duty to preserve evidence when litigation is imminent. *Cache La Powder Feeds, LLC v. Land O'Lakes, Inc*. 244 F.R.D. 614, 620 (D. Colo. 2007). In this case, it is uncontested that the Plaintiffs' duty to preserve evidence was triggered by the various discovery requests and correspondingly, Plaintiffs had notice of this duty. It is also uncontested that despite this knowledge, Plaintiffs relinquished possession and control of the Decedent's and Alayna Ordonez's cell phones before any inspection of the devices could take place and without advance notice to the Defendants.

B.   Prejudice Resulting from Destruction of Relevant Evidence

The more difficult issue is whether Defendants were prejudiced by the failure to produce the cell phones or the data on them. The Tenth Circuit Court of Appeals has held that alleged spoliated evidence must be relevant in order to demonstrate the prejudice necessary to justify imposition of a spoliation sanction. *Henning v. Union Pac R.R. Co., 530 F.3d 1206, 1220* (10th Cir. 2008).

A primary contention in this case concerns what efforts, if any, were made by Defendants to "meaningfully "assist the Decedent to get to his correct hotel. Defendants have raised an affirmative defense that the Decedent contributed to his own death. Pursuant to Fed R. Civ. P. 26(b) (1), relevance is broadly construed, and information is therefore generally obtainable if there is "any possibility" that the discovery sought may be relevant to the claim or defense of any party. Most broadly construed, then, this case is about what happened to Mr. Ordonez during the evening and early morning preceding his death and relevance must be evaluated in that context.

According the Defendants, the cell phone data would have permitted them to investigate and possibly determine the following:

Decedents' whereabouts and time at each location before the incident via GPS/geolocation tracking, including the time in the Fairfield Inn lobby upon first arrival time to and from the colleague's hotel room in the Fairfield Inn time while in the colleague's hotel room in the Fairfield Inn and time in the Fairfield Inn lobby before decedent departed the hotel; any phone calls made or received by Decedent, as well as any text message or emails sent or received by Decedent in the night in question; whether Decedent attempted to obtain transportation to his

hotel via cab ride-share application acquaintances, or other means; and photographs, videos, or other media recorded or received by Decedent on the night and morning in question.

In response, Plaintiffs argue in a conclusory fashion that there is nothing unknown about Decedent's whereabouts on the night and early morning preceding his death and that Defendants are merely seeking speculative information unsupported by the mutually known facts.

The Special Master finds that the Defendants were prejudiced by the withholding of the cell phones and the data therein. In light of Defendants' affirmative defense that Decedent's own conduct on that evening contributed to his death, it is relevant whether Ordonez attempted to obtain some sort of transportation himself. In addition, it is uncontested that Ordonez was accompanied throughout the evening by Baylee Lander, a colleague, and, at least for part of the time, another unidentified person. Lander has virtually no recollection of the events of the relevant time period due to his intoxication and the unidentified person is still unidentified, at least for the purpose of this motion. The time and location services provided by a cell phone would have allowed independent investigation of those events including the timing of the various events throughout the evening, and perhaps would have identified calls made during that time, including potential calls to the unidentified person.

Plaintiffs argue that they attempted to mitigate any prejudice by subpoenaing A T & T for the cell phone data. However, this attempt at remediation was unsuccessful. Plaintiffs requested information for the wrong dates and the wrong period of time, resulting in a response from A T&T which is meaningless in the context of this case.

C. Bad Faith

Defendants claim that Plaintiffs' decision to return the cell phones (the decedents and his wife's) to A T & T was made in bad faith, rather than negligence or accident. Plaintiff respond that they attempted to mitigate any prejudice by subpoenaing A T & T for the information

Defendants also request a finding that the Plaintiffs acted in bad faith in failing to disclose the identity of a "second" cell phone belonging to the Decedent. This so-called "second" cell phone is different that the cell phone discussed above, i.e., the Decedent's cell phone and his wife's cell phone. The existence of this "second" cell phone was discovered by the

5

Defendants through a subpoena for hospital records. Its whereabouts are still unknown and have not been disclosed to the Defendants.

The Defendants request that the Court impose severe sanction, including dismissal, due to these "extreme circumstances." They additionally request attorneys fees and cost. Alternatively, they request that an adverse inference instruction be given in an effort to remediate the prejudice cause by the Plaintiffs' spoliation. (An adverse inference instruction may be issued by the Court as a result of spoliation if bad faith is demonstrated. *Henning v. Union Pac. R.R. Co.* 530 F3d 1206,1219020 (10th Cir. 2008).

It is uncontested that the Decedent's and Alayna Ordonez's cell phones were returned to A T & T by Alayna Ordonez for the reasons she suggests: she couldn't stand to have them in the house after her husband's death, and she couldn't afford to pay for them. (#115 p. 8). There is no suggestion that the Plaintiffs' attorneys directed the phones be returned. In addition, the Plaintiffs did try to remediate the situation, albeit ineffectively.

With respect to the so-called "second" cell phone, the Special Master finds that the Defendants failed to establish a reasonable possibility, based on concrete evidence that access to the lost material would have produced evidence favorable to his cause. According, the Special Master finds the Defendants have failed to prove that the Plaintiffs acted in bad faith.

## Conclusion

For the reasons discussed above, the Special Master recommends that the Mt. for Sanction for Spoliation of Material Evidence be granted. The Special Master recommends that attorneys fees and costs be awarded and any other sanction(s) as the Magistrate Judge and District Judge deem appropriate. The Special Master recommends that the request for a finding of bad faith be denied.

Dated this 1st day of November.

By the Special Master

*Nancy E. Rice*

Nancy E. Rice

6